# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARCIA MUSKETT,

      Plaintiff,

v.                                        Civ. No. 20-0006 KK

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER is before the Court on Plaintiff Darcia Muskett's ("Ms. Muskett's")
Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 16), filed
May 26, 2020, seeking review of Defendant the Commissioner of the Social Security
Administration's decision denying Ms. Muskett's claim for Title II disability insurance benefits
and Title XVI supplemental security income benefits under 42 U.S.C. §§ 405(g) and 1383(c)(3).
The Commissioner filed a response in opposition on July 27, 2020 (Doc. 18), and Ms. Muskett
filed a reply in support of her motion on August 11, 2020 (Doc. 19).

Having meticulously reviewed the entire record and relevant law and being otherwise fully
advised, the Court finds that Ms. Muskett's motion is well taken and should be GRANTED.

## I.  Legal Standards

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the
undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 9.)

A.      **Standard of Review**

This Court must affirm the Commissioner's final decision denying social security benefits unless:  (1) "substantial evidence" does not support the decision; or, (2) the Administrative Law Judge ("ALJ") did not apply the correct legal standards in reaching the decision.  42 U.S.C. §§ 405(g), 1383(c)(3); *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The Court must meticulously review the entire record but may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  Although the Court may not re-weigh the evidence or try the issues *de novo*, its consideration of the record must include "anything that may undercut or detract from the [agency]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the agency's] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  Thus, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the ALJ . . . must discuss the

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

**B.      Disability Determination Process**

A person must, *inter alia*, be "under a disability" to qualify for disability insurance benefits under Title II; similarly, a "disabled" person may qualify for supplemental security income benefits under Title XVI.  42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1).  An individual is considered to be disabled if he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies the statutory criteria:

(1)      At step one, the ALJ must determine whether the claimant is engaging in "substantial gainful activity."[2]  If the claimant is engaging in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)      At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment (or combination of impairments) that is severe and meets the duration requirement, he is not disabled.

(3)      At step three, the ALJ must determine whether a claimant's impairment meets or equals in severity one of the listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P, and meets the duration requirement.  If so, a claimant is presumed disabled.

(4)      If none of the claimant's impairments meet or equal one of the listings, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  This step involves three phases.  *Winfrey v. Chater*, 92 F.3d

---

[2] "Substantial work activity is work activity that involves doing significant physical or mental activities."  20 C.F.R. §§ 404.1572(a), 416.972(a).  "[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. Third, the ALJ must determine whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is able to perform his past relevant work is not disabled.

(5)     If the claimant is unable to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan*, 399 F.3d at 1261. The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## II. Background and Procedural History

### A.     Factual Background

Ms. Muskett alleges that she became disabled on June 12, 2013, at 44 years of age, due to

interstitial cystitis, chronic pelvic pain, a shattered right wrist, and depression.  (AR 225-29.)[3]  Ms. Muskett is a high school graduate with a computerized accounting certificate, and she previously worked as a payroll technician, a school secretary, and a computer technician.  (AR 52, 230.)  Ms. Muskett testified that the pain in her back, leg, ankle, and pelvis makes it difficult for her to work.  (AR 53-54.)  Additionally, she explained that drowsiness, a side-effect of her medications, makes her forgetful, unable to concentrate, and incapable of safely driving.  (AR at 54, 64, 68.)

## B.    Procedural History

On September 14, 2015, Ms. Muskett applied for disability insurance benefits under Title II and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434 and 1381–1383f.  (AR 193-205.)  She alleged a disability onset date of June 12, 2013, and her date last insured was December 31, 2016.  (AR 72, 85.)  Disability Determination Services found that Ms. Muskett was not disabled, both initially (AR 81-95) and on reconsideration (AR 98-127).  Ms. Muskett requested a hearing with an ALJ on the merits of her application.  (AR 148.)

ALJ Ann Farris conducted a hearing in Albuquerque on January 31, 2018.  (AR 45-71.)  The ALJ took testimony from Ms. Muskett, who was unrepresented,[4] and from an impartial vocational expert ("VE"), Sandra Trost.  (AR 45-71.)  On December 5, 2018, the ALJ issued an unfavorable decision.  (AR 25-35.)  On November 4, 2019, the Appeals Council denied Ms. Muskett's request for review, rendering the ALJ's decision the Commissioner's final decision from which Ms. Muskett now appeals.  (AR 1-4.)

---

[3] Citations to "AR" are to the transcript of the administration record filed in this matter on March 25, 2020.  (Doc. 13.)

[4] At the administrative hearing before ALJ Farris, Ms. Muskett indicated that she wished to proceed without representation.  (AR 46-47.)  Counsel later entered their appearance on Ms. Muskett's behalf on January 25, 2019, after ALJ Farris issued her decision in this case.  (AR 21.)

**C.**      **The ALJ's Decision**

The ALJ determined at step one of the sequential evaluation process that Ms. Muskett had not engaged in substantial gainful activity since her alleged onset date.  (AR 28.)  At step two, the ALJ found that Ms. Muskett has the severe impairments of: "interstitial cystitis, history of surgical repair of the right wrist, opioid abuse, sciatica, and right knee injury."  (*Id*.)  The ALJ stated that the "record indicates that [Ms. Muskett] also has obesity, history of left calcaneal spur[,] and history of depression."  (*Id*.) (citing Ex. 2F/5).  However, she determined that these impairments were non-severe, as they did not "significantly limit [Ms. Muskett's] ability to perform basic work activities."  (*Id*.)

The ALJ determined at step three that Ms. Muskett's impairments do not meet or medically equal the severity of one of the listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  (*Id*.)  As a result, the ALJ proceeded to step four, where she found that Ms. Muskett has the RFC:

> to perform less than a full range of sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a).  She can never kneel, crouch, or crawl; and can frequently handle with the right hand.

(AR 29.)  The ALJ also found at step four that Ms. Muskett is able to perform her past relevant work as a payroll clerk, school secretary, and software specialist.  (AR 34.)  Accordingly, the ALJ determined that Ms. Muskett had "not been under a disability, as defined in the Social Security Act, from June 12, 2013, through the date of this decision."  (AR 35.)

## III.   Analysis

In support of her motion to remand, Ms. Muskett argues that: (1) the Appeals Council erred in determining that evidence she submitted did not constitute chronologically pertinent evidence; (2) the ALJ erred by failing to properly weigh the opinion of Dr. Heath, her treating physician; and

(3) the ALJ erred by failing to account for all of the limitations found by state agency non-examiners, Dr. Werner and Dr. Bell. (Doc. 16 at 1.) For the reasons that follow, the Court reaches only the first issue and concludes that the Appeals Council erred by failing to consider the additional evidence Ms. Muskett submitted following the ALJ's unfavorable decision. As a result of this error, the case requires remand.

**A.    The Appeals Council erred by declining to consider Dr. Heath's Physical and Non-Physical Medical Assessments.**

The ALJ issued her unfavorable decision on December 5, 2018. (AR 25-35.) Thereafter, in February 2019, Ms. Muskett submitted additional evidence to the Appeals Council, requesting that it consider the following records:

1. a February 1, 2019 Third Party Statement by Evangeline Perry (AR 16-18)
2. a February 6, 2019 Third Party Statement by Ettaline Perry (AR 8-10)
3. a March 6, 2017 Upright MRI (AR 41-42)
4. a February 6, 2019 Treatment Letter by Ann E. Heath, M.D. (AR 11-12)
5. a February 5, 2019 Medical Assessment of Ability to do Work-Related Activities (Physical & Non-Physical) by Ann E. Heath, M.D. (AR 13-15)

The Appeals Council determined that Ms. Muskett's MRI and additional Third-Party Statements did "not show a reasonable probability that [they] would change the outcome of the decision." (AR 2.) Accordingly, the Appeals Council "did not exhibit this evidence." (*Id.*) As for Dr. Heath's Medical Assessments and Treatment Letter, the Appeals Council determined that the records did "not relate to the period at issue [and t]herefore [did] not affect the decision about whether [Ms. Muskett was] disabled beginning on or before December 5, 2018." (*Id.*) Ms. Muskett moves to remand on the basis that the Appeals Council failed to consider or admit Dr. Heath's Physical and Non-Physical Medical Assessments. (Doc. 16 at 13.)

Whether evidence qualifies for consideration by the Appeals Council is a question of law

subject to *de novo* review.  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  The Appeals

Council must review additional evidence if it "is new, material, and relates to the period on or

before the date of the hearing decision, and there is a reasonable probability that the additional

evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

In addition, the claimant must show "good cause for missing the deadline to submit the evidence."

20 C.F.R. §§ 404.970(c), 416.1470(c).

If additional evidence does *not* qualify for the Appeals Council's consideration, "it plays

no further role in judicial review of the Commissioner's decision."  *Copelin v. Saul*, No. 18-CV-

0727-KK, 2019 WL 4739536, at *7 (D.N.M. Sept. 27, 2019) (citing *Chambers v. Barnhart*, 389

F.3d 1139, 1142 (10th Cir. 2004)).  If the evidence *does* qualify and the Appeals Council considers

it, "it becomes part of the record that the district court assesses in evaluating the Commissioner's

denial of benefits."  *Id.* (citation omitted).  However, if the Appeals Council errs by not

considering qualifying additional evidence, as Ms. Muskett contends the Appeals Council erred

here, "the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in

light of the completed record."  *Id.* (citing *Casias v. Saul*, 18-CV-00537-LF, 2019 WL 4013890,

at *3-4 (D.N.M. Aug. 26, 2019)).

As a preliminary matter, the Court notes that the Appeals Council did not discuss whether

Ms. Muskett had good cause for missing the deadline to submit her additional evidence.  (*See* AR

1-4.)  As such, Ms. Muskett maintains that the Court need not analyze the question of good cause

here, as the issue was "essentially waived."  (Doc. 16 at 14.)  Alternatively, she contends that she

*did* have good cause for submitting Dr. Heath's Medical Assessments after the ALJ's decision.

(*Id.*)  Ms. Muskett's attorney notes that Ms. Muskett was unrepresented at the hearing before ALJ

Farris and argues that due to her "emotional and pain issues, Ms. Muskett failed to recognize the

voids in the administrative record and the ALJ did not develop the record for Pro Se claimant from her treating physicians thus resulting in further development by this counsel." (*Id.* (citing AR 334)). Ms. Muskett submits that the ALJ's failure to develop the record was an "unusual, unexpected, or unavoidable circumstance beyond [her] control." (*Id*. (citing 20 C.F.R. § 970(b)(3).). Ms. Muskett also explains that the new evidence could not have been submitted sooner because it did not exist at the time ALJ Farris issued her unfavorable decision in this case. (*Id.* at 15.) The Commissioner takes no position on this point.

The Court agrees with Ms. Muskett that, under the circumstances, it need not undertake a good-cause analysis. *See Bleau v. Saul*, Civ. No. 19-300 KK, 2020 WL 1049252, at *6 (D.N.M. Mar. 4, 2020); *Emmons v. Saul*, No. 19-CV-0102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020) (declining to reach the issue of good cause for failure to timely submit additional evidence, where the Appeals Council did not reject the evidence on that basis); *Holder v. Berryhill*, No. 17-CV-1206 LF, 2019 WL 2716758, at *4 (D.N.M. June 28, 2019) (same).

Ms. Muskett next argues that the Appeals Council erred when it declined to consider Dr. Heath's Medical Assessments, because contrary to the Appeals Council's determination, the assessments were chronologically pertinent. (Doc. 16 at 18-19.) Ms. Muskett insists that the Appeals Council's "legal error is harmful and reversible" and that the case should be remanded for consideration of Dr. Heath's Medical Assessments. (*Id.* at 19.) In contrast, the Commissioner contends that the Appeals Council's denial of Ms. Muskett's request for review is not judicially reviewable under sentence four of 42 U.S.C. § 405(g). (Doc. 18 at 16.) He maintains that the Appeals Council's "dismissal 'is binding and not subject to further review.'" (*Id.* (citing 20 C.F.R. § 404.972).) Relying on *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017), the Commissioner suggests that the Court's review here is limited to consideration of whether ALJ Farris's decision

"remains supported by substantial evidence *despite* the untimely evidence submitted by [Ms. Muskett]." (*Id.* at 17.)  The parties' contrasting arguments reveal a divide in their understanding of the Appeals Council's treatment of Ms. Muskett's additional evidence.

In *Vallejo*, the ALJ denied SSI benefits, and the plaintiff submitted with her request for review to the Appeals Council a new mental RFC evaluation dated one day after the ALJ's decision.  *See Vallejo II*, 762 F. App'x at 533.  "The Appeals Council accepted [the mental RFC evaluation] into the record without explanation and denied review."  *Id.*  The plaintiff then moved for reversal or remand to the district court based in part on her argument "that the Appeals Council erred in not properly articulating its assessment of [the evaluation] in denying [her] request for review."  *See id.* at 533-34 (quoting *Vallejo I*, 849 F.3d at 953).  The district court "remanded for the Appeals Council either to determine what weight to give to [the] opinion or to remand for the ALJ to make that determination."  *See id.* at 534 (citing *Vallejo I*, 849 F.3d at 953).  The Tenth Circuit reversed the district court, "explain[ing] that the Appeals Council is not required to expressly analyze new evidence when it denies review[,]" but "only to consider the new evidence—and a conclusory statement that it has done so is sufficient."  *Id.* (quoting *Vallejo* I, 849 F.3d at 955 (internal quotation marks omitted)).  Because the Appeals Council in *Vallejo* accepted the opinion into the record, the district court was required "to conduct a substantial-evidence review by assessing the entire agency record, including" the new opinion, to determine whether the augmented record "support[ed] the Commissioner's final decision."  *Id.* (quoting *Vallejo I*, 849 F.3d at 956).

This case is distinguishable from *Vallejo*, however.  Here, the Appeals Council determined that the subject evidence "does not affect the decision about whether [she was] disabled beginning on or before December 5, 2018."  (AR 2.)  The relevant regulations provide that the Appeals

Council must "consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Threet*, 353 F.3d at 1191 (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995); citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)); *see also* 20 C.F.R. §§ 404.970(b), 416.1585(b). In other words, relation to the applicable period, or chronological pertinence, is a standard for determining whether evidence qualifies for the Appeals Council's consideration. Thus, in determining that Dr. Heath's Medical Assessments did not satisfy the chronological pertinence standard, the Appeals Council implicitly determined that the evidence did not qualify for consideration. *See Garcia v. Berryhill*, No. 16cv0686 KK, 2017 WL 3149416, at *6 (D.N.M. June 9, 2017) (reasoning that the Appeals Council necessarily determined that the additional evidence in question did not qualify for consideration when it determined that it was not chronologically pertinent); *see also Bleau*, 2020 WL 1049252, at *11 (reasoning that the Appeals Council implicitly determined that the additional evidence in question did not qualify for consideration, where it determined that the evidence did not satisfy the "reasonable probability" standard); *Secatero v. Saul*, No. 19-CV-0087 SCY, 2020 WL 419463, at *5 (D.N.M. Jan. 27, 2020) (rejecting the Commissioner's argument that the Appeals Council actually "considered" the additional evidence and concluding instead that the Appeals Council's "dismissal of the additional evidence's import [under the "reasonable probability" standard] indicate[d] that it ultimately found the evidence did not qualify for consideration at all").

Because the Appeals Council did not consider Dr. Heath's Medical Assessments in its review of the record, the Court may not now consider them "under the deferential substantial-evidence standard." *See Chambers*, 389 F.3d at 1143. Instead, the Court must determine under *de novo* review whether the Appeals Council erroneously refused to consider qualifying additional

evidence.  *See Secatero*, 2020 WL 419463, at *5.  If so, "the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in light of the completed record."  *Id.*  In short, the proper inquiry is the one Ms. Muskett advances, *i.e.*, whether the additional evidence qualifies as new, material, and chronologically pertinent.  *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).  Although the Appeals Council declined to consider Dr. Heath's Medical Assessments on the ground that they were not related to the relevant time period, the Court addresses all three criteria for consideration in its *de novo* review.

### 1.  The additional evidence is new.

Ms. Muskett insists that Dr. Health's Medical Assessments constitute "new" evidence. (Doc. 16 at 16.)  Additional evidence is "new" if it is "not duplicative or cumulative."  *See Threet*, 353 F.3d at 1191.  Ms. Muskett maintains, and the Court agrees, that the subject records are neither duplicative nor cumulative.  (*Id.* at 16-17.)

First, the Medical Assessments in question did not exist at the time the ALJ issued her decision in this case.  The ALJ issued her decision on December 5, 2018, and Dr. Heath provided the Medical Assessments two months later, on February 5, 2019.  (*Compare* AR 35, *with* AR 13-15.)  Second, there were no other Medical Assessment forms in the record at the time of the ALJ's decision in this case.  (*See* AR 335-1726.)  Finally, Dr. Heath indicated that her Medical Assessment opinions were based on "observations," "records," and "objective testing."  (AR 14-15.)  Because Dr. Heath did not provide the Medical Assessments until February 5, 2019, she had the opportunity to review Ms. Muskett's records up to that date, including her own treatment records.  As such, her opinions are also "new" in the sense of being uniquely comprehensive.

The Court concludes that Dr. Heath's Medical Assessments are neither duplicative nor cumulative but constitute "new" evidence withing the meaning of 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5).

### 2. The additional evidence is chronologically pertinent.

Ms. Muskett maintains that the additional evidence she submitted to the Appeals Council relates to the period before ALJ Farris's decision.  (Doc. 16 at 18-19.)  The Commissioner emphasizes that Dr. Heath provided her Medical Assessments *after* the ALJ's decision, but he does not otherwise argue that the Assessments do not relate to the relevant period.  (*See* Doc. 18 at 1.)

Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ – that is, "the period 'on or before the date of the [ALJ's] hearing *decision*.'"  *Chambers*, 389 F.3d at 1143 (quoting 20 C.F.R. § 404.970(b)).  In assessing chronological pertinence, the Tenth Circuit has not focused on whether the evidence pre-dated the ALJ's decision but instead on whether the new evidence was pertinent to the issues that were before the ALJ at the time of the decision.  *See Padilla v. Colvin*, 525 F. App'x 710, 711 (10th Cir. 2013).

Here, Dr. Heath's Medical Assessments relate to the time period the ALJ adjudicated in that they bear upon impairments that Ms. Muskett experienced during the relevant period and which the ALJ considered, *i.e.*, interstitial cystitis, right wrist impairment, opioid abuse, sciatica, and right knee injury.  (AR 28).  In her 2019 Physical Medical Assessment, Dr. Heath assessed Ms. Muskett's abilities to stand, walk, sit, and lift, and she opined as to Ms. Muskett's manipulative and postural limitations.  (AR 14.)  In her Non-Physical Medical Assessment, Dr. Heath opined as to Ms. Muskett's ability to maintain attention, concentration, and pace, to perform activities within a schedule, to maintain regular attendance and punctuality, and to complete a normal workweek without interruptions from pain or fatigue.  (AR 15.)  Critically, comparing Dr. Heath's treatment

records with her Medical Assessments reveals that the functional limitations that Dr. Heath opined were caused by the precise impairments enumerated by the ALJ.

At nearly every one of Ms. Muskett's 36 appointments with Dr. Heath in 2017 and 2018 she complained of lumbar back pain, often with either radiculopathy or sciatica that affected her extremities. (*See* AR 1528-1722.) Ms. Muskett reported that her back pain affected her ability to walk (*see, e.g.*, AR 1557-61, 1623, 1698-1702), to sit and stand (*see* AR 1623), to sleep (*see* AR 1543-47), and to perform various movements (*see, e.g.*, AR 1611 (reporting that her severe back pain was aggravated by "bending, changing positions, coughing, daily activities, defecation, extension, flexion, rolling over in bed, sitting, sneezing, standing, twisting, and walking")). She also reported that her severe back pain caused her "stress." (AR 1638.) Ms. Muskett sought treatment from Dr. Heath for symptoms related to chronic interstitial cystitis[5] throughout 2017 and 2018, including abdominal, pelvic, and vaginal pain (AR 1572-76, 1593-98, 1605-22, 1635-41, 1605-22, 1635-51), urinary frequency (AR 1617-22, 1635-41, 1653–58, 1713-17), dysuria (AR 1533-37, 1572-76, 1593-98, 1605-22, 1635-41, 1647-58, 1681-85, 1713-22), and urinary urgency (AR 1593-98, 1605-22, 1635-41, 1713-17). Moreover, Ms. Muskett advised Dr. Heath that she was experiencing right wrist pain in early 2017 (AR 1538-42) and a right knee injury in May of 2017 (AR 1577-81). Finally, Dr. Heath's records thoroughly document Ms. Muskett's opioid abuse disorder, her opioid prescriptions, and Dr. Heath's attempt to reduce the amount of opioid medication that Ms. Muskett required. (*See generally* AR 1528-1722.)

---

[5] Interstitial cystitis "is a chronic bladder problem" in which a person's bladder holds urine after their kidneys have filtered it but before they urinate. *Interstitial Cystitis*, WebMD, https://www.webmd.com/urinary incontinence-oab/interstitial-cystitis (last visited March 2, 2021). Interstitial cystitis in women can cause pain in the bladder, lower back, pelvis, urethra, and vagina. *Id.* Additionally, it can also cause frequent and urgent urination. *Id.* The disease can affect a person's "social life, exercise, sleep, and even [their] ability to work." *Id.*

Notably, Dr. Heath completed Ms. Muskett's Medical Assessments only two months after the ALJ's decision, minimizing the extent to which Dr. Heath could have based her opinions on an exacerbation of Ms. Muskett's symptoms outside the relevant time frame.  (*Compare* AR 35, *with* AR 13-15.)  Further, the Assessments themselves instructed Dr. Heath to consider Ms. Muskett's "medical history and chronicity of findings as from one year prior to initial visit to current examination."  (AR 14-15.)  Dr. Heath began treating Ms. Muskett by at least May 2016.  (*See* AR 1413 (indicating that Ms. Muskett "sees [Dr.] Heath today for clearance for surgery on her wrist).)  Thus, Dr. Heath was to consider Ms. Muskett's medical history and chronicity of findings from at least May 2015.  There is no indication in the record that Dr. Heath neglected to do so.  Rather, her Medical Assessments confirm that her opinions were supported by Ms. Muskett's records and objective test results.  (*See* AR at 14-15.)

In sum, Dr. Heath's Medical Assessments, coupled with the records from her treatment and evaluation of Ms. Muskett throughout 2017 and 2018, demonstrate Dr. Heath's intent to offer opinions applicable not only to the date of her assessment but also to the period of time relevant to the ALJ's decision.  Accordingly, Dr. Heath's reports are chronologically pertinent.

### 3. The additional evidence is material.

Before 20 C.F.R. §§ 404.970 and 416.1470 were revised in 2017, evidence was considered "material" if there was a "reasonable *possibility* that it would have changed the outcome."  *See Threet*, 353 F.3d at 1191 (emphasis added).  However, recent revisions to these regulations have effectively heightened the materiality standard, requiring a claimant to now show a "reasonable *probability*" that the additional evidence would have changed the outcome of the disability claim.  *See Copelin*, 2019 WL 4739536, at *7 (citing *Bisbee v. Berryhill*, No. 18-CV-0731, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019)) (noting that the new regulations "heighten[] the

claimant's burden to prove materiality; whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it requires a reasonable *probability* of changing the outcome"); *see also Cordova v. Saul*, No. 19-CV-0126-LF, 2020 WL 614577, at *3 (D.N.M. Feb. 10, 2020); *Tolbert-Taylor v. Saul*, No. 19-CV-0195 CG, 2020 WL 376639, at *5 (D.N.M. Jan. 23, 2020).  Thus, the materiality of Dr. Heath's Medical Assessments hinges on whether there is a reasonable probability that they would have changed the outcome of Ms. Muskett's disability claim.

The Appeals Council did not address the materiality of the Medical Assessments, determining instead that they were not chronologically pertinent.  (*See* AR 2 (explaining that Dr. Heath's Medical Assessments did "not relate to the period at issue [and t]herefore [did] not affect the decision about whether [Ms. Muskett was] disabled beginning on or before December 5, 2018.").)  While Ms. Muskett contends that Dr. Heath's Medical Assessments were material (Doc. 16 at 17-18), the Commissioner maintains that they "would not change the ALJ's decision because there are several good reasons for refusing to give [them] controlling weight or any other significant degree of weight" (Doc. 18 at 18).

The Court begins its *de novo* review of the materiality of Dr. Heath's Medical Assessments by comparing the ALJ's RFC determination with those contained in the Medical Assessments. The ALJ accounted for Ms. Muskett's various impairments by limiting her to sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that the ALJ found Ms. Muskett could never kneel, crouch, or crawl, and could frequently handle with the right hand.  (AR 29.)  The Commissioner notes that Dr. Heath's Physical Medical Assessment "includes some limitations that appear to be identical to the ALJ's RFC finding."  (Doc. 18 at 18 (citing AR 14, 29).)  While it is true that both Dr. Heath and the ALJ determined that Ms. Muskett could never kneel, crouch,

or crawl (AR 14, 29), Dr. Heath also found that Ms. Muskett had the following *additional* physical

limitations:

- could occasionally lift less than 5 pounds
- could stand and/or walk for a total of less than 2 hours in an 8-hour workday
- could sit for a total of less than 4 hours in an 8-hour workday
- could never operate foot controls with either foot
- could never reach, handle, finger, push/pull, or keyboard with her right hand/arm
- could never reach, push/pull, or keyboard with her left hand/arm

(AR 14.)  Further, ALJ Farris did not include any non-physical limitations in her RFC.  (*See* AR

29.)  Dr. Heath, on the other hand, determined that Ms. Muskett was ***markedly***[6] limited in each of

the following areas:

- "Maintain[ing] attention and concentration for extended periods (i.e. 2-hour segments)"
- "Perform[ing] activities within a schedule"
- "Maintain[ing] physical effort for long periods without a need to decrease activity or pace, or to rest intermittently"
- "Sustain[ing] an ordinary routine without special supervision"
- "Complet[ing] a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods."

(AR 15.)

Dr. Heath's opinions call into question the ALJ's RFC assessment because, if adopted, they

would impose significantly greater limitations on Ms. Muskett's ability to do work-related

activities.  In fact, a number of the impairments opined by Dr. Heath would preclude Ms. Muskett

from working altogether.  According to the Program Operations Manual Systems ("POMS"), the

following abilities, found by Dr. Heath to be markedly impaired, are critical to performing *any*

---

[6] The Medical Assessment form completed by Dr. Heath defined "marked" as "[a] severe limitation which **precludes** the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule."  (AR 15.)

job: (1) "to maintain concentration and attention for extended periods"; (2) "to perform activities within a schedule"; (3) "to sustain an ordinary routine without special supervision"; and (4) "to complete a normal workday and workweek without interruptions." (*Compare* Social Sec. Admin., DI § 25020.010(b)(2)(a)-(d), POMS, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited Mar. 1, 2021), *with* AR 14-15.)

Even so, the Commissioner contends that Dr. Heath's Medical Assessments are not material because they are not well-supported by objective medical evidence. (Doc. 18 at 18.) Relatedly, he discounts the Assessments as merely "conclusory, check-box-style form[s]" without any description of supporting evidence. (*Id.*) The Commissioner is correct that the Medical Assessment forms themselves do not describe with particularity the evidence supporting the functional limitations. (*See* AR 14-15.) The forms do, however, indicate that Dr. Heath's findings were based on "observations," "records," and "objective testing." (*Id.*) Ms. Muskett insists that her "consistently high levels of pain," as reported throughout her medical records, lend support to the restrictions Dr. Heath opined. (Doc. 16 at 18 (citing AR 619, 1533, 1539, 1605, 1611, 1656).) Ms. Muskett also maintains that Dr. Heath's findings are supported by her "abnormal lumbar MRI, worsening lumbar tenderness and spasms, decreased sensation in the bilateral thighs, frequent UTIs/chronic interstitial cystitis, chronically ill appearance, and history of depression." (*Id.* (citing AR 1528-1717).) The Court agrees that Ms. Muskett's medical records provide support for a finding that she experienced high levels of pain, both from her back condition and her interstitial cystitis, which affected her ability to do work-related activities. In other words, when considered in conjunction with Dr. Heath's treatment records, the Medical Assessments are well-supported by objective medical evidence.

Next, the Commissioner contends that Dr. Heath's opinions are inconsistent with those of other medical sources. (Doc. 18 at 18.) He suggests, for instance, that the ALJ would have favored the opinions of Drs. Mark Werner and Walter Bell, two non-examining state agency medical experts, over the opinions contained in Dr. Heath's Medical Assessments. (*See id*.) Treating physician opinions are typically entitled to more weight than those of non-examining state agency physicians. 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2) (providing that treating sources are generally given more weight and their opinions are entitled to controlling weight so long as they are well-supported by medical evidence and consistent with the record and providing that the length) (effective for claims filed between Aug. 24, 2012 to Apr. 27, 2017). Here, however, the ALJ previously afforded "little weight" to Dr. Heath's opinion that Ms. Muskett was "completely and totally unable to work at any occupation." (AR 33.) She did so, at least in part, because the opinion involved an issue "reserved to the Commissioner" which could "never be entitled to controlling weight." (AR 33 (citing AR 1690; 20 C.F.R. § 404.1527(d)(2); SSR 96-5p, 1996 WL 374183).) The ALJ also reasoned that Dr. Heath's opinion was "inconsistent with the objective medical evidence of record and relie[d] heavily on the claimant's subjective complaints." (*Id*.) However, at the time she made this finding, the ALJ did not have the benefit of Dr. Heath's Medical Assessments and was evaluating only Dr. Heath's conclusory opinion about Ms. Muskett's inability to work. There is a reasonable probability that the functional limitations contained in Dr. Heath's Medical Assessments would have substantially altered the ALJ's analysis of the weight assigned to each medical source.

The Commissioner also asserts that Dr. Heath's opinions are inconsistent with the evidence of record. (Doc. 18 at 18.) In this regard, he submits that "Dr. Heath opined that [Ms. Muskett] had limitations in areas of functioning about which she has never complained and for which she

had never received treatment." (*Id.* at 19.)  Specifically, the Commissioner points to the manipulative limitations that Dr. Heath opined for Ms. Muskett's left hand and insists that Ms. Muskett "has never had a left-arm or left-hand injury." (*Id.*)  Dr. Heath's own treatment records demonstrate otherwise, however.  Dr. Heath indicated that Ms. Muskett's severe low back pain radiated to her left arm and caused tingling in her left fingers.  (*See, e.g.,* AR 1543-47; 1557-61.) As such, the Court is not persuaded that the Commissioner has demonstrated inconsistency with respect to manipulative limitations.

Ultimately, the Court cannot say that if the ALJ had considered the Medical Assessments in the first instance she would have rejected the limitations enumerated by Dr. Heath for any of the reasons articulated by the Commissioner.  Significantly, if the ALJ had adopted even *some* of the limitations opined in Dr. Heath's Medical Assessments, she would have arrived at a more restrictive RFC and would have likely agreed with Dr. Heath that Ms. Muskett was unable to work. In short, Dr. Heath's Medical Assessments are material in that there is a reasonable probability that they would have changed the outcome of Ms. Muskett's disability claim.

Having determined that the additional evidence Ms. Muskett submitted to the Appeals Council is new, chronologically pertinent, material, and has a reasonable probability of changing the outcome of Ms. Muskett's disability claim, the Court finds that the Appeals Council erroneously failed to consider it.  As such, the case must be remanded for review of the additional evidence as required under 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5).

**B.    Remaining Claims**

Ms. Muskett advances several additional arguments in support of her motion to remand. However, because the Court concludes that remand is required as set forth above, it will not address these remaining claims of error.  *See Chambers*, 389 F.3d at 1143 (explaining that it is for the

Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

**IV.   <u>Conclusion</u>**

For the reasons stated above, IT IS HEREBY ORDERED that Ms. Muskett's Motion to Reverse and Remand for a Rehearing (Doc. 16) is GRANTED.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent